IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUNILKUMAR K. PATEL, *et al.* :
    Plaintiffs

v. : Civ. No. ELH-14-1709

UNITED STATES :
DEPARTMENT OF AGRICULTURE
    Defendant

: * * * * * :

RESPONSE TO MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

    Plaintiffs, Sunilkumar K. Patel, et al., by Elise Davis and Anne C. Ogletree, their attorneys, respond to the Defendant's motion and state:

    1. The agency alleges that there were two patterns of EBT transactions indicative of trafficking, i.e. – multiple transactions from individual accounts in unusually short periods of time; and high dollar transactions made from recipient accounts. A.R. 174.

    2. For the reasons set out in the accompanying memorandum, affidavits and exhibits, there are legitimate reasons for those patterns, and the facts present questions of fact to be resolved by the court.

    Wherefore, Plaintiff asks that the motion to dismiss or for summary judgment be denied, and the case be scheduled for trial.

                            _____
                            Elise Davis    Bar No. 02270
                            P.O. Box 2431
                            Easton, MD 21601
                            410-763-4877
                            welshwitch@verizon.net

                                                      _____
Anne C. Ogletree, Bar. No. 23470
P./O. Box 559
Denton. MD 21629
410-479-2573
aco5@verizon.net

## CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of July, 2014, I caused a copy of the aforegoing Response to Motion to Dismiss or for Summary Judgment, supporting affidavits and accompanying memorandum to be mailed by first class mail, postage prepaid to Joseph R. Baldwin, Assistant United States Attorney, United States Attorney's Office, 36 S. Charles St., 4th Floor, Baltimore, MD 21201

                                                      _____
Elise Davis
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUNILKUMAR K. PATEL, *et al.*  :
    Plaintiffs

v. : Civ. No. ELH-14-1709

UNITED STATES :
DEPARTMENT OF AGRICULTURE
    Defendant

: * * * * * :

MEMORANDUM

**Background**:

This matter appears to have come to the attention of the Food and Nutrition Service (FNS) through an automated system report of patterns which ***might*** indicate trafficking. [emphasis added]. As a result of that report, a "contractor" was sent to review the Greensboro Deli (the Deli) on August 30, 2013. The review consisted of taking some pictures; creating a stunningly inaccurate diagram of the store layout, A. R. 16; and supplying an inaccurate and woefully understated inventory. A. R. 13. An entire section of the store, the food storage section where bulk frozen food is kept, was not even shown on the diagram, nor was that area observed or photographed[1]. <u>See</u>, affidavit of Sunilkumar K. Patel, Exhibit 1; Affidavit of Dawn Parks, former owner, Exhibit 2; Affidavit of Terry

---

[1] The closest the "contractor" doing the inspection got to the bulk storage area was to take a photograph of the entrance to the "employee's only" area where the bulk storage and frozen food freezer is located. A. R. 25. Since no effort was made to investigate what lay down the "employee's only" corridor, and no questions were asked by the "contractor", the "contractor" never saw the freezer, or the bulk storage. No request was ever made to the store owner to visit that area. Exhibit 1, affidavit of Sunilkumar K. Patel. The store owner willingly gave permission to the contractor to inspect and photograph, as he had noting to hide. A.R. 15.

3

Davidson; Exhibit 3. A corrected drawing of the store layout produced by Terry Davidson, is attached as Exhibit 4. Photographs of the food storage area including the walk in freezer, the walk in refrigerator and the food preparation stations are supplied in individual photographs identified as 5045.jpg thru 5055.jpg, and 5059.jpg thru-5061.jgp in the file attached as Exhibit 5.

As a result of not doing a thorough inspection, the "contractor", and subsequently the administrative law judge, who relied on the inaccurate and misleading information provided by the "contractor", concluded that:

1. The store stock was limited and there were no " ...boxes of steak or chicken", items that the Deli sells in bulk  A.R. 176; A.R. 148-149;

2. There was no freezer  A.R. 175;

3. No fresh or frozen meats or seafood were in stock.  A.R. 175.

All of those conclusions were based on the inadequate inspection report. No documents were examined, no inquiry was made of patrons or management.

The government's case is premised on two purchasing fact patterns evident in the EBT transactions at the Deli -- it found that the store inventory did not support "high dollar" purchases, and it found that there were multiple purchases from individual EBT accounts within short periods.

**Bulk Sales, and high dollar purchases**

The Deli buys its frozen products and deli meats in bulk from 2 suppliers, Sysco and Kirby Halloway.  Exhibit 6, collectively, contains the purchase orders for the quarter ending 12/31/12. Exhibit 7, collectively, contains the purchase orders for the quarter ending 12/31/13.  Exhibit 8,collectively,  provided for comparison purposes shows the bulk purchases for the most recent quarter following the Deli's disqualification. Note the purchase of bulk fresh and frozen meat, onion rings, cheese and potato logs, beef patties, steaks, broccoli bites and cheese sticks as well as chicken tenders and wings.  While it is true that some of these items are prepared and sold in the store as "hot foods" ineligible for EBT transactions, the Deli also sells these products to its customers in bulk should they wish to purchase them. The bulk sales are not advertised in the paper, or by flyer, but the

customers know the items are available, and will ask for them. See, affidavit of Amanda Blevins, Exhibit 9; affidavit of Betty Beulah, Exhibit 10; affidavit of Mayuri Brahmbhatt, Exhibit 11. If a customer buys a box of beef steaks, for instance, that one purchase would amount to $52.50. It is not difficult to see how a family of four might easily spend over $100 for bulk meat and poultry.

The Deli is located across the street from an apartment complex known as Rolling Meadows. Affidavit of Sunilkumar K. Patel, Exhibit 1. Many of the Deli customers are residents of Rolling Meadows and are without transportation. The Deli is very convenient for them. Affidavit of Lana Stella, Exhibit 12, affidavit of Amanda Blevins, Exhibit 9. Their only other local choice is Save-A-Lot, some distance away down the highway. There are no sidewalks. For many residents Save-A-Lot is difficult to visit. Deli customers do not like the selection at Save-A-Lot, and generally believe that they get better products as well as competitive prices at the Deli. Exhibit 12, affidavit of Lana Stella.

On July 15, 2014 Terry Davidson visited the Deli to talk with customers. While she was there she obtained the affidavits attached to this memorandum. During her visit, she overheard an order being called in for later pick up. A short time later, the customer, Melissa (Missy) Gardner arrived, and Ms. Davidson observed her pick up her order totaling over $35.00. Order notation and receipt, Exhibit 13. Ms. Gardner was formerly an EBT customer.

When the Deli participated in the SNAP Program, Ms. Stella spent an average of $50 per week at the Deli since she was able to use her card at the store. Exhibit 12. Ms. Beulah resides some distance from the Deli in the main part of town. She would call in her orders ahead of time. Her orders often totaled more than $30, and she would often use her EBT card to pay for eligible foods. She was aware of the Deli's bulk sales and would " ask about the other foods in the back". Exhibit 10. Given the selection of bulk frozen food available at the Deli and the preferences of its customers, large transactions are not unusual.

**Multiple Transactions within short periods:**

In the administrative proceeding the Plaintiffs advised the agency that the local

population, EBT customers, cash customers and credit card customers alike, have generally similar buying habits. They tend to buy processed foods, frozen foods or cold foods; they like to call in large orders, then come to the store to pick up their orders. They will then pay for the items in the order, but often discover they have forgotten an item they needed, or they roam the store looking at other items while the order is being rung up. Often they end up purchasing soda, snacks and/or cold food before they leave. Their method of payment for the second purchase is generally the same as that used for the first order. If they are an EBT customer and the item they forgot or wish to purchase is not eligible, they will pay for the second transaction in cash or by check. <u>See</u>, A.R. 138; Exhibit 14, affidavit of Missy Gardner. Ms. Gardner is not the only Deli customer evidencing that buying pattern. Attached hereto are the affidavits of several store customers (former EBT customers) acknowledging that buying pattern. <u>See</u>, Exhibit 9, affidavit of Amanda Blevins; Exhibit 10, affidavit of Betty Beulah; Exhibit 15, affidavit of Caryn Morrill..

Further evidence of this general buying pattern in the community is evident in the documentation presented by the Plaintiffs and contained in the administrative record. The Plaintiff submitted a number of credit card receipts, A.R. 139-142. Those credit card receipts show a similar buying pattern – multiple transactions within a short period of time.

The community wide purchasing pattern can also be seen in credit card transactions taking place this month. <u>See</u>, credit card receipts attached hereto as exhibits 16-19[2]. Exhibit 16 is evidence of a patron's multiple visits to the Deli on a single day; Exhibit 17 shows two small transactions two (2) minutes apart; Exhibit 18 illustrates two (2) transactions within seconds. Exhibit 19 contains two (2) receipts, the first for a large order placed by the customer, the second for the customer's selection of one or more items within seconds of the first purchase.

While the credit card receipts may be for both eligible and ineligible items under SNAP regulations, they do evidence a community wide purchasing pattern common to both EBT customers and credit customers.

---

[2] Personal identifiers and account numbers have been redacted.

**The Law**

The Plaintiffs concur with the government that summary judgment is proper if "there is no genuine issue as to any material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this case the Plaintiffs dispute the inspection report. It is incomplete and inaccurate. Where, as here, the moving party is relying on incorrect information, inaccurate facts not shared with the Plaintiffs until the administrative record was received, due process requires that the Plaintiff be given the opportunity to rebut the faulty conclusions drawn.

**Conclusion**

Some purchasing patterns may, indeed, evidence trafficking. Some, on the other hand, may simply be the result of the way individuals wish to do their grocery shopping, or are required to do their shopping.

In this case, members of the Greensboro community choose to purchase items in bulk at the Deli for their own convenience. The store owners assist the customers by preparing and packing the orders and having each customer's order available for the customer to retrieve at the customer's convenience. Many of the Deli's customers are aware that the Deli sells in bulk, and order foods in bulk. When the customer arrives to collect the neatly packed order, they are tempted to buy other items displayed in the store.

In the instant case the transactions complained of are more consistent with excellent customer service and good marketing than with trafficking and present a question of fact that the court must decide.

_____
Elise Davis   Bar No. 02270
P.O. Box 2431
Easton, MD 21601
410-763-4877
welshwitch@verizon.net

_____
Anne C. Ogletree, Bar. No. 23470
P. O. Box 559

Denton. MD 21629  
410-479-2573  
[aco5@verizon.net](mailto:aco5@verizon.net)

State of Maryland
Caroline County, to wit:

I am Sunilkumar K. Patel. My friends and customers call me Suni. My wife and I purchased the Greensboro Deli from a limited liability company owned by Dawn Parks and her husband. At the time we purchased the property and the business we noticed that there was an apartment complex across the street and thought it would be good for our new business.

We took over the store on July 1st, 2009. Dawn worked with us for a time, introducing us to vendors and customers. During the 'get acquainted ' period, we thought we could increase our business with better customer service. We noticed that the residents of Rolling Meadows, the apartment complex, liked to shop with us, and one or more of them inquired if we participated in the SNAP program. My wife and I talked it over and decided to apply.

During the early days of our ownership we had customers compliment us on our meats. At that time we purchased in bulk but did not sell in bulk. Since there was an inquiry about the possibility of selling in bulk made by a customer, we thought we would try it. We did not then, and do not now advertise that service, but our regular customers are aware that we will sell all of the items we carry for our 'hot' food in bulk, should a customer wish to purchase in bulk. The price list is posted in the store. See, exhibit 5, recent photographs, see also A.R. 25, which does not clearly show the corridor area where our bulk food list is posted.

From the first days of our ownership we determined that customer service was going to be our strong point, and we strive everyday to make each visit to the store pleasant for our customers. When one of them asked if we would take orders over the phone, we agreed to do so. We pack those orders and have them waiting when the customer arrives. While the customer is waiting for the clerk to ring up the order they generally look around the store. Often they will come up to the register after we have completed the check out and wish to add another item or two. We will then process that transaction, and they leave. This pattern of buying is shared by all our customers – those who used EBT cards, those

who use credit cards and those who pay in cash or by check. We have provided copies of credit card receipts illustrating the pattern.

While we participated in the SNAP program we adhered to all regulations. We never tendered cash to our customers. We noticed that some of our EBT customers would place large orders when their benefits were transferred to their card. They explained that they liked to purchase in bulk at one time so that all they have to buy later in the month are small items. We accommodated them. We were never advised that an EBT purchase had to be less than $35 or it would be considered excessive.

On the day of the inspection, August 30, 2013, I was working behind the register. A patron was sitting at one of the tables eating a late lunch. A woman entered the store and stated that she was making an inspection and inquired if I would permit her to do so. I agreed and signed a consent . A.R. 15. She was not very friendly, and did not respond to my customer when he greeted her. She was in my view the entire time she was in the store, which did not seem like more than ten (10) minutes. She wrote down some information and took pictures. She never asked me any questions, and did not enter our storage area or our food preparation area. She left. I would not recognize her again if I saw her.

Until I saw the record in this case I was not aware that the inspector misrepresented our store. Ms. Terry Davidson, a graphic artist, visited my store on July 15th and made a corrected diagram putting in that which the inspector omitted. We have a large freezer and a large walk in our storage area that the inspector did not see and did not ask to see. We had no idea we were being investigated for trafficking, we thought this was another periodic inspection like those made by the Health Department. We would willingly have shown her anything she wished to see had she asked.

We are very thankful that our customers continue to shop with us although we are no longer permitted to participate in the SNAP program. We recognize that this creates a hardship for many of them, and we appreciate their loyalty.

We are often asked if we will be allowed to resume participation in the SNAP program. We are unable to answer our customers, although we assure them we are doing

all we can everything we can to make that happen.

I am over the age of 18, I am competent to be a witness, and I have personal knowledge of all the facts set out in this affidavit.

_____
Sunilkumar K. Patel

Sworn and subscriber before me, a notary public for the State of Maryland, Talbot County on this 17th day of July, 2014.

_____
Notary Public
My Commission expires: